IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
**NORTHERN DIVISION**

| | |
|---|---|
| WEST AMERICAN INS. CO., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION CASE NUMBER: |
| ) | |
| ASPHALT PAVING CO., INC., and ) | **2:05-CV-1125-B** |
| EASTDALE MALL, LLC, ) | |
| ) | |
| Defendants. ) | |

### WEST AMERICAN INSURANCE COMPANY'S
### BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

COMES NOW the Plaintiff in the above-styled action, **West American Insurance Company ("West American")**, and in support of its Motion for Summary Judgment, submits this legal memorandum brief.

### I. Statement of Facts

West American initiated the present action with the filing of its Complaint for Declaratory Judgment on November 23, 2005. (West American's Evidentiary Submission, Exhibit 1). In its Complaint, West American seeks a declaration of its rights and obligations under a policy of insurance issued to Asphalt Paving Company, Inc. ("Asphalt Paving"). *Id.* Specifically, West American issued its insurance policy, which includes a Commercial General Liability Coverage Part, to Asphalt Paving with effective dates of August 1, 2004 to August 1, 2005, which bears policy number BKW(05)52965427. (West American's Evidentiary Submission, Exhibit 3). Asphalt Paving made a claim for defense and indemnity under this policy on West American for the civil action styled *Eastdale Mall, LLC v.*

*Asphalt Paving Co., Inc., et al.*, bearing Civil Action Number CV05-1391, pending in the Circuit Court of Montgomery County, Alabama. (Hereinafter referred to as "the underlying lawsuit", a copy of which, as amended, is attached to West American's Evidentiary Submission as Exhibit 2).

The underlying lawsuit arises out of the construction, paving and striping of the parking lot at Eastdale Mall in Montgomery, Alabama. *Id.* In its lawsuit, Eastdale Mall, LLC asserts it owns a portion of the property in question, including the parking lot on the property. It further alleges Asphalt Paving and the other defendants undertook to construct, pave and stripe a portion of the parking lot at Eastdale Mall and that the work was performed in a negligent, reckless and wanton manner. Additionally, Eastdale Mall, LLC alleges the defendants negligently, wantonly and recklessly supervised others who performed the work and that the striping work was incorrectly performed such that it resulted in fewer parking spaces at Eastdale Mall than are required by Eastdale Mall, LLC's contracts with stores operating at Eastdale Mall. *Id.* As damages, Eastdale Mall, LLC contends its parking lot now has fewer spaces than required by contractual obligations with its tenants, that it is due the amount required to correct the alleged deficiencies in the striping at its parking lot and that it now has inadequate parking for its customers such that it suffers a loss of business and reputation. *Id.*

## II. Relevant Policy Provisions

The Commercial General Liability Part of West American's policy contains a number of provisions which apply to the claims made in the underlying lawsuit and West American's rights and/or obligations under the policy. For ease of reference, the relevant policy provisions are as follows:

**SECTION I - COVERAGES**

**COVERAGE A - BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

1.  Insuring Agreement

    (a) We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply...

    (b) This insurance applies to "bodily injury" and "property damage" only if:

    (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

    ...

**SECTION II - EXCLUSIONS**

This insurance does not apply to:

**(j) Damage to Property**

"Property damage" to:

(5) That particular part of real property on which you or any contractor's or subcontractor's working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

(6) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

...

Paragraphs (3), (4), (5) and (6) of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph (6) of this exclusion does not apply to "property damage" included in the "products - completed operations hazard."

...

**(k) Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**(l) Damage to Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products completed operations hazard."

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

4

**(m) Damage To Impaired Property or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of":

(1) A defect, deficiency, inadequate or dangerous condition in "your product" or "your work"; or

(2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to " your product" or "your work" after it has been put to its intended use.

...

**SECTION V - DEFINITIONS**

...

8. "Impaired Property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

a. It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous;

b. You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by:

a. The repair, replacement, adjustment or removal of "your product" or "your work"; or

b. Your fulfilling the terms of the contract or agreement.

5

...

13. "Occurrence" means an accident, including continuous or continued exposure to substantially the same general harmful conditions.

...

16. "Products - completed operations hazard":

a. Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

(1) products that are still in your physical possession; or

(2) work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

(a) When all of the work called for in your contract has been completed.

(b) When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

(c) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

(d) Work that may need service, maintenance, correction, repair or replacement but which is otherwise complete, will be treated as completed.

b. Does not include "bodily injury" or "property damage" arising out of:

...

6

(3) Products or operations for which the classification, listed in the Declarations or in a policy schedule, states that product-completed operations are subject to the General Aggregate Limit.

17. "Property damage" means:

a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

...

21. "Your product":

a. means:

(1) any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

(a) you;

(b) others trading under your name; or

(c) a person or organization whose business or assets you have acquired.

...

22. "Your work":

a. means:

(1) work or operations performed by you or on your behalf; and

7

> (2) materials, parts or equipment furnished in connection with such work or operations.
>
> b. includes:
>
> (1) warranties or representations made at any time with respect to the fitness, quality, durability, performance, use of "your work", and
>
> (2) the providing of or failure to provide warnings or instructions.

### III. Legal Argument

The claims asserted in the underlying lawsuit are based squarely upon Asphalt Paving's alleged failure to properly stripe the parking lot at Eastdale Mall. In short, they arise out of Asphalt Paving's alleged faulty workmanship. Consequently, they do not amount to an "occurrence" required for coverage under West American's policy. Even if they did, there are numerous exclusions in West American's policy which exclude the claims in the underlying lawsuit from coverage. Each of these policy provisions will be addressed below.

### A. Asphalt Paving's allegedly defective work is not an "occurrence".

The underlying lawsuit does not trigger coverage under West American's policy unless there is an "occurrence" within the meaning of the policy. The policy defines "occurrence" as follows:

> 13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

8

Under Alabama law, it is clear that a contractor's failure to complete its work or failure to complete its work appropriately does not amount to an "accident" and therefore, cannot be an "occurrence". For example, in *USF&G Co. v. Warwick Development Co., Inc.*, 446 So.2d 1021 (Ala. 1984), the Alabama Supreme Court was asked to determine whether a comprehensive general liability policy provided coverage for alleged faulty workmanship and non-compliant materials in the construction of a residence. As background, homeowners sued the contractor/seller of their home and their first mortgage holder alleging unworkmanlike construction and misrepresentation of material fact. *Warwick Development Co., Inc.*, 446 So.2d 1022. The contractor/seller filed a third-party complaint against its insurers, claiming both were liable under comprehensive general liability policies issued to it after both insurers refused to defend it in the lawsuit and denied coverage. *Id.* On the day of trial, one of the insurance carriers was dismissed on summary judgment and USF&G's Motion for Summary Judgment was denied. *Id.* at 1023. After trial, USF&G appealed and the contractor/seller cross-appealed. *Id.*

The first issue addressed by the Alabama Supreme Court was whether USF&G's policy provided coverage for alleged faulty workmanship and non-complying materials in the construction of the residence when the alleged damage was confined to the residence itself. *Id.* The USF&G policy defined "occurrence" as "an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured." The Alabama Supreme Court determined there was no "occurrence" within that definition. *Id.*

9

The Alabama Supreme Court reached an identical finding based on similar facts in *Berry v. South Carolina Ins. Co.*, 495 So.2d 511 (Ala. 1985). In *Berry*, homeowners brought an action against contractors based on the contractors' alleged failure to finish work at their home and the contractors requested their comprehensive general liability insurance carrier to provide a defense to the lawsuit. *Berry*, 495 So.2d at 512. The carrier then filed suit seeking declaratory relief and eventually, the trial court entered summary judgment in favor of the insurer.

On appeal, the Alabama Supreme Court addressed whether the claims involved in the lawsuit amounted to an "occurrence" as that term was defined by the comprehensive general liability policy. Ultimately, the court determined that "all of the 'damages' [were] related to work done pursuant to the [contractors'] contract" and consequently, did not amount to an "occurrence" which was defined as "an accident, including continuous or repeated exposure to conditions...".

The claims in the underlying lawsuit are virtually identical to those asserted by the homeowners in both *Warwick Development Co., supra* and *Berry, supra*. In the underlying lawsuit, Eastdale Mall, LLC claims Asphalt Paving failed to stripe its parking lot properly and the parking lot now has fewer spaces than it should. Like the policies in question in *Warwick Development Co.* and *Berry*, West American's policy defines "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." Consequently, like the homeowners' claims in *Warwick Development*

*Co.* and *Berry*, the claims by Eastdale Mall, LLC do not amount to an "occurrence" under West American's policy and no coverage exists for those claims under the policy.

### B. Even if there was an "occurrence," policy exclusions apply.

Although Alabama law shows there is no covered "occurrence" at issue, even if there were, a number of policy exclusions apply. Specifically, the policy provisions exclude from coverage "damage to property," "damage to your product," "damage to your work," and "damage to impaired property not physically injured." (West American's Evidentiary Submission, Exhibit 3, Section II – Exclusions (j), (k), (l) and (m)). Those exclusions each apply to the claims in the underlying lawsuit.

#### 1. Exclusion (j) – Damage to Property.

West American's policy plainly provides:

> This insurance does not apply to:
>
> **(j) Damage To Property**
>
> "Property damage" to:
>
> 5. That particular part of real property on which you or any contractor's or subcontractor's working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or
>
> 6. That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.
>
> ...
>
> Paragraphs 3, 4, 5 and 6 of this exclusion do not apply to liability assumed under a sidetrack agreement.

11

> Paragraph 6 of this exclusion does not apply to "property damage" included in the "products–completed operations hazard."

A comparison of the claims in the underlying lawsuit to the language in this exclusion shows the underlying lawsuit is excluded from coverage. Even if it is assumed the claims in the underlying lawsuit amount to "property damage," which West American disputes, any such alleged damage necessarily arose out of Asphalt Paving's work or that of its subcontractor.[1] The underlying lawsuit makes clear the alleged damage is to the parking lot, the only area on which Asphalt Paving worked. Since the alleged "property damage," if that is found to exist, is to the parking lot, (the area on which Asphalt Paving worked) and allegedly arose out of its work or that of its subcontractor, the claims are excluded from coverage.

### 2. Exclusion (k) – Damage to Your Product.

West American's policy further provides:

> The subject policy does not apply to:
>
> **(k) Damage To Your Product**
>
> "Property damage" to "your product" arising out of it or any part of it.

The policy defines "your product" as:

---

[1] Of note, Eastdale Mall, LLC's alleged damages likely do not amount to "property damage". Their claims are for economic or monetary loss and those claims do not constitute "property damage" as that term is typically defined in comprehensive general liability policies. *See, e.g., American States Ins. Co. v. Martin*, 662 So.2d 245 (Ala. 1995); *Ajdarodini v. State Auto Insurance Companies*, 628 So.2d 312 (Ala. 1993); *Reliance Ins. Co. v. Gary C. Wyatt, Inc.*, 540 So.2d 688 (Ala. 1989).

21. "Your Product":

a. means:

1. Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

a. You;

...

Again, the underlying lawsuit makes clear Eastdale Mall, LLC's claims arise out of Asphalt Paving's allegedly defective striping of its parking lot. As a contractor, Asphalt Paving provided its product, namely the asphalting and striping of parking lots, to Eastdale Mall, LLC and now, Eastdale Mall, LLC contends the parking lot has fewer spaces than it should and must be redone. From the nature of the claims made in the underlying lawsuit, it is apparent the alleged damage is to Asphalt Paving's product, the parking lot itself. Consequently, the claims in the underlying lawsuit are excluded from coverage under West American's policy.

### 3. Exclusion (I) – Damage To Your Work.

West American's policy provides:

The subject policy does not apply to:

**(l) Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products–completed operations hazard."

> This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.
>
> The policy defines "your work" as:
>
> 1. Work or operations performed by you or on your behalf; and
>
> 2. Materials, parts or equipment furnished in connection with such work or operations.

Again, Asphalt Paving's work in question was the asphalting and paving of the parking lot at Eastdale Mall. It is the asphalting and paving work itself Eastdale Mall, LLC now claims was done incorrectly and that it must redo at its expense. Since the alleged "property damage" is to the parking lot, Asphalt Paving's work itself, it is excluded by the terms of West American's policy.

### 4. <u>Exclusion (m) – Damage To Impaired Property.</u>

Finally, West American's policy provides:

> The policy defines "impaired property" as:
>
> "Property damage" to "impaired property" or property that has not been physically injured, arising out of":
>
> (1) A defect, deficiency, inadequate or dangerous condition in "your product" or "your work"; or
>
> (2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.
>
> This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to " your product" or "your work" after it has been put to its intended use.

14

If it is determined there is damage to property other than Asphalt Paving's "product" or "work" claimed in the underlying lawsuit, then any such property would fall within the definition of "impaired property" in West American's policy. In its lawsuit, Eastdale Mall, LLC contends Asphalt Paving failed to fulfill the terms of its agreement by completing defective paving work on its parking lot at Eastdale Mall. It further claims its parking lot is less useful than it should be as a result, because it does not contain as many parking spaces as required. As such, any damage to any property other than Asphalt Paving's "product" or "work" would be damage to "impaired property" and thereby excluded from coverage under West American's policy.

### IV. Conclusion

In conclusion, no coverage exists for the underlying lawsuit under the General Liability Coverage Part under West American's policy. The alleged damages in the underlying lawsuit do not amount to "property damage" and were not the result of an "occurrence," as those terms are defined by West American's policy. Even if "property damage" caused by an "occurrence" were at issue, the claims in the underlying lawsuit would be excluded from coverage by a number of West American's policy provisions. The claims are excluded in their entirety by the "damage to property," "damage to your product," "damage to your work" and "damage to impaired property" exclusions.

Consequently, there are no genuine issues of material fact and West American is entitled to a judgment as a matter of law in its favor declaring it owes no defense and/or indemnity, contribution or coverage on the insurance policy it issued to Asphalt Paving for

the civil action styled *Eastdale Mall, LLC v. Asphalt Paving Company, Inc., et al.*, bearing Civil Action Number CV05-1391, pending in the Circuit Court of Montgomery County, Alabama.

Christopher J. Zulanas
Email: czulanas@friedmanleak.com

Michael J. Douglas
Email: mdouglas@friedmanleak.com

ATTORNEYS FOR PLAINTIFF:
WEST AMERICAN INSURANCE COMPANY

OF COUNSEL:
**Friedman, Leak, Dazzio, Zulanas & Bowling, P.C.**
Post Office Box 43219
Birmingham, AL 35243
(205) 278-7000
(205) 278-7001 Fax

## CERTIFICATE OF SERVICE

I hereby certify I have caused a copy of the foregoing pleading to be electronically filed and served on all counsel of record listed below this the 15TH day of AUGUST, 2006.

| | |
|---|---|
| Mr. Robert D. Segall | Mr. Donald R. Jones, Jr. |
| **Email: segall@copelandfranco.com** | **Email: don@djoneslaw.com** |
| COPELAND, FRANCO, SCREWS & GILL, P.A | DONALD R. JONES, JR., P.C. |
| Post Office Box 347 | 2000 Interstate Park Drive, Suite 104 |
| Montgomery, AL 36101-0347 | Montgomery, AL 36109 |

OF COUNSEL

16