IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
**Northern Division**

| | |
|---|---|
| WEST AMERICAN INS. CO., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION CASE NUMBER: |
| ) | |
| ASPHALT PAVING CO., INC., and ) | 2:05-CV-1125-B |
| EASTDALE MALL, LLC, ) | |
| ) | |
| Defendants. ) | |

### WEST AMERICAN INSURANCE COMPANY'S RESPONSE TO ASPHALT PAVING COMPANY, INC.'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

COMES NOW the Plaintiff in the above-styled action, **West American Insurance Company** ("**West American**"), and for its response to Defendant **Asphalt Paving Company, Inc.'s** ("**Asphalt Paving**") Opposition to West American's Motion for Summary Judgment, says as follows:

### I. Introduction

Defendant Asphalt Paving asserts, in the face of plain and unambiguous language contained within the insurance contract between itself and West American, that its "reasonable expectations" govern the existence and extent of insurance coverage provided. However, Asphalt Paving's assertion directly contradicts extremely well-settled law in Alabama that insurance contracts, like any other contract, must be enforced according to their written terms. *Jackson v. Prudential Insurance Co.*, 474 So.2d 1071 (Ala. 1985). Parties to an insurance

contract may not rewrite or ignore the clear and unambiguous contract provisions of insurance policies. *Northam v. Metropolitan Life Ins. Co.*, 231 Ala. 105 (Ala. 1935). The law in Alabama supports the finding that insurance companies have the right, in the absence of statutory provisions to the contrary, to limit their liability and write policies with narrow coverage. *Centennial Insurance Company v. Cummins Alabama, Inc.*, 1992 U.S. Dist. LEXIS 2793, *3 (citing *Moordian v. Canal Insurance Company*, 130 So. 2d 915 (Ala. 1961).

The West American policy at issue this case provides coverage only in those instances where bodily injury or property damage is caused by an "occurrence" as that term is defined under Alabama law. West American asserts, under the authority of *USF&G Co. v. Warwick Development Co., Inc.*, 446 So.2d 1021 (Ala. 1984) and *Berry v. South Carolina Ins. Co.*, 495 So.2d 511 (Ala. 1985), that Asphalt Paving's failure to properly stripe the parking lot at Eastdale Mall does not constitute an "occurrence," an event which is plainly required to trigger coverage under the West American policy. Even in the event the Court determines that Asphalt Paving's failure to perform its work in accordance with its contractual obligations constitutes an "occurrence", coverage for the claims in the underlying lawsuit is excluded pursuant to the "damage to property," "damage to your product," "damage to your work" and "damage to impaired property not physically injured" exclusions in the West American policy at issue.

## II. Legal Argument

### A. *USF&G v. Bonitz Insulation Co. of Alabama* is Distinguishable From the Case at Bar.

Asphalt Paving heavily relies upon *USF&G v. Bonitz Insulation Company of Alabama*, 424 So. 2d 569 (Ala. 1982) in support of its argument that its failure to properly perform its contractual obligations constitutes an "occurrence" sufficient to *initially* trigger coverage under the West American policy. Asphalt Paving's cursory treatment of the facts in *Bonitz* is telling; a closer examination reveals that the Alabama Supreme Court found support for its holding that Bonitz's alleged negligent installation of a roof resulted in "continuous or repeated exposure to conditions" that in turn caused water damage to the building's ceilings, walls, carpet and floors. *Bonitz* at 573. In the instant case, Asphalt Paving's alleged failure to properly stripe the Eastdale Mall did not result in "property damage" to anything aside from its own product (the parking lot itself), and as such, does not constitute an "occurrence" under *Bonitz* or West American's policy language.

On two occasions since *Bonitz* was decided, the Alabama Supreme Court has specifically held that a contractor's failure to perform its contractual duties does not constitute an "occurrence" as that term is defined in the West American Policy. *See USF&G v. Warwick Development Company, Inc.*, 446 So.2d 1021 (Ala. 1984); *Berry v. South Carolina Ins. Co.*, 495 So.2d 511 (Ala. 1985). In *Warwick*, the USF&G policy defined an "occurrence" as "an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint

3

of the insured." *Warwick* at 1023. The West American policy at issue in this case contains a nearly identical definition of "occurrence." There, as here, the alleged damages for which coverage was sought were the result of "unworkmanlike construction" performed by the contractor. The *Warwick* Court expressly held that the allegations of unworkmanlike construction did not constitute an "occurrence" sufficient to trigger coverage under the USF&G policy. *Id.*

*Warwick's* rationale was subsequently applied in *Berry v. South Carolina Ins. Co.*, 495 So.2d 511 (Ala. 1985), a case cited by West American in its original brief to this Court. In that case, the Berrys made claims against a contractor arising out of the contractor's failure to perform its contractual obligations in a workmanlike manner. *Berry* at 512. The South Carolina Insurance Company policy at issue defined an "occurrence" as "an accident, including continuous or repeated exposure to conditions..." Like Asphalt Paving, the Berrys relied upon *Bonitz* as authority for their position that there was an "occurrence" which caused "property damage" sufficient to trigger coverage under the policy at issue. *Id.*

The Alabama Supreme Court specifically rejected this argument and held that because "all of the damages are related to work done pursuant to the contract," there was no

4

"occurrence" and coverage for the loss did not exist.[1] Asphalt Paving's reliance upon *Bonitz* is therefore misplaced and the claims by Eastdale Mall, LLC do not amount to an "occurrence" under West American's policy. Consequently, no coverage exists for those claims and West American is entitled to judgment as a matter of law.

### B. The "Damage to Property" Exclusion Applies to Preclude Coverage.

Even if Asphalt Paving's alleged faulty workmanship resulting in improper striping of the Eastdale Mall parking lot did amount to an "occurrence" under West American's policy, any damage claimed is plainly excluded from coverage. The plain language of the "damage to property" exclusion discussed in West American's original brief is unambiguous and clearly applies to Eastdale Mall's claims. In the instant case, to the extent any "property damage" occurred, it was confined to the parking lot, the only area in which Asphalt Paving performed its operations. In fact, Eastdale Mall specifically claims the parking lot itself must be redone. (Eastdale Mall's complaints, as amended; West American's Evidentiary Submission, Exhibit

---

[1] *See also, Custom Coasters, Inc. v. Stonewall Surplus Lines Ins. Co.,* 1999 U. S. Dist. Lexis 3295 (U. S. D. C., S. D. of Ala. 1999)(holding coverage did not exist under a general liability policy containing terms virtually identical to those in West American's policy for negligent engineering, design and/or construction by the insured of a roller coaster where the underlying lawsuit contained counts similar to those at issue in the present matter and the underlying plaintiff claimed damages for lost profits, damage to the value of the roller coaster, loss of use and business and damage to its reputation, much like Eastdale Mall does in the underlying lawsuit at issue in the case at bar. Specifically, under Ohio principles of law similar to those in Alabama, the Court determined that claims of negligent design, engineering and construction were not an "accident" and therefore not an "occurrence" under the general liability policy in question.

In the present matter, Eastdale Mall's claims against Asphalt Paving are essentially the same. The underlying complaint, as amended, contains counts for breach of contract and negligent construction, neither of which are "accidents" amounting to an "occurrence" under West American's policy.

"2"). This exclusion specifically excludes coverage where, as here, the alleged property damage arose out of the insured's operations, and includes by definition property damage to "that particular part of any property that must be restored, repaired or replaced because 'your work' was incorrectly performed on it." This exclusion clearly precludes coverage for the alleged "property damage" to the parking lot itself and in addition, for any particular part of the parking lot which must be restored, repaired or replaced (*i.e.*, restriped).

In short, the basic allegation in the underlying lawsuit–well documented in the affidavits submitted by Asphalt Paving in conjunction with its responsive brief–is the failure to properly measure and stripe the individual parking spaces contained within the parking lot. Consequently, any other alleged damages necessarily arise out of Asphalt Paving's claimed failure to properly stripe the lot. Asphalt Paving's attempts to circumvent the "damage to property exclusion", by claiming that the Mall Complex itself has suffered a "loss of use, and is less valuable" is therefore without merit since any such damages would be excluded from coverage as they "arise out of" Asphalt Paving's operations. Moreover, any claims in that regard are purely for economic or monetary loss. As it is a corporation, any damage claims by Eastdale Mall in the underlying lawsuit must be and are for nothing more than alleged economic or monetary losses. Since those types of losses do not constitute "property damage" as that term is typically defined in comprehensive general liability policies like West American's, no coverage exists for them here. *See, e.g., American States Ins. Co. v. Martin*, 662 So.2d 245 (Ala. 1995); *Ajdarodini v. State Auto Insurance Companies*, 628 So.2d 312 (Ala. 1993); *Reliance Ins. Co. v. Gary C. Wyatt, Inc.*, 540 So.2d 688 (Ala. 1989). The

"damage to property" exclusion therefore applies to preclude coverage for the claims against Asphalt Paving in the underlying lawsuit and West American is entitled to judgment as a matter of law.

### C. The "Damage to Your Product" Exclusion Applies.

As a threshold matter, Asphalt Paving offers no authority for its position that the asphalt–the only product it alleges it supplied on the Eastdale Mall project–became "real property" upon its application to the parking lot surface, and therefore does not constitute "your product" under the applicable policy exclusion. (Asphalt Paving's Response to Motion for Summary Judgment, p. 20). Once again, Asphalt Paving defaults to *Bonitz* in an attempt to trigger coverage where none exists by claiming "property damage" to the "Mall Complex" and the "Mall Parking Lot" are at issue. In *Bonitz*, however, the contractor's negligent installation of the roof directly caused roof leaks, which in turn allowed water to penetrate the building envelope and cause **physical injury**, not only to the roof, but to the building's ceilings, walls, carpet and floors. *Bonitz* at 573.

On the contrary, the allegedly defective workmanship at issue in the underlying lawsuit did not result in property damage and certainly no "physical injury" to property aside from that upon which Asphalt Paving performed its operations–a critical distinction for purposes of the *Bonitz* Court's decision to extend coverage under the USF&G policy at issue in that case. Here, there is absolutely no contention the striping of the parking lot physically injured the Mall Complex. The striping has not damaged the mall building or any of its contents. Instead, the only alleged damages are for the cost of redoing the parking lot and the bare allegation the

7

mall has less monetary value because of the alleged faulty striping. To the extent Asphalt Paving asserts that Eastdale Mall "is claiming property damage to the Mall complex and the Mall parking lot" in an effort to take advantage of *Bonitz*'s rationale, West American would again reiterate that Eastdale Mall's claims in that regard are purely for economic or monetary loss and do not constitute "property damage" as that term is typically defined in comprehensive general liability policies. *See, e.g., American States Ins. Co. v. Martin*, 662 So.2d 245, 248 (Ala. 1995) (holding that purely economic losses are not included in the definition of "tangible property"); *Ajdarodini v. State Auto Insurance Companies*, 628 So.2d 312 (Ala. 1993); *Reliance Ins. Co. v. Gary C. Wyatt, Inc.*, 540 So.2d 688 (Ala. 1989). Coverage for the claims asserted against Asphalt Paving in the underlying lawsuit is therefore precluded pursuant to the "damage to your product" exclusion and West American is entitled to judgment as a matter of law.

**D. The "Damage to Impaired Property" Exclusion Applies to Preclude Coverage Regardless of the Scope of Any Property Damage.**

As set forth above, the claims and alleged damages in the underlying lawsuit do not amount to an "occurrence" under West American's policy. Even if they did, the alleged damage is to or the result of Asphalt Paving's work and/or product such that the aforementioned exclusions apply. In an effort to avoid the clear applicability of the policy exclusions, Asphalt Paving contends Eastdale Mall claims its complex is less valuable and that allegation falls outside the "damage to property" and "your product" exclusions. Since that claim necessarily arises out of Asphalt Paving's allegedly defective operations and/or product, namely the

8

parking lot, the "damage to property" and "your product" exclusions apply. Moreover, that claim is for nothing more than economic or monetary damage, something that is not "property damage" under West American's policy. Finally, if such damage actually exists, it is excluded from coverage by the "impaired property" exclusion in West American's policy.

As to the "impaired property" exclusion, Asphalt Paving relies exclusively upon the alleged "ambiguity" of the "impaired property" exclusion contained within the West American policy to avoid its application, but fails to support its allegation with any citation to controlling authority whatsoever. A fair reading of the "impaired property" exclusion at issue, however, reveals no ambiguity at all. To the contrary, the Alabama Supreme Court, in *Asam v. American Liberty Insurance Company*, 413 So. 2d 1056 (Ala. 1982), affirmed the lower court's decision when it found that the "damage to impaired property" exclusion contained in the American Liberty Insurance Company policy was unambiguous and operated to exclude coverage where, as here, there was an alleged failure by one party to adequately perform its contractual obligations. *Id* at 1059. Accordingly, the exclusion, set forth in full in West American's original brief, must be enforced according to its written terms. *Jackson v. Prudential Insurance Co.*, 474 So.2d 1071 (Ala. 1985).

Aside from the claimed ambiguity, Asphalt Paving offers no substantive explanation as to why the exclusion would not apply to preclude coverage for the claims against it in the underlying lawsuit. Simply put, should this Court determine that there is damage to property other than Asphalt Paving's "product" which did not arise out of its operations, then any such alleged property damage would fall within the definition of "impaired property" in West

American's policy. That exclusion specifically provides that coverage is not afforded for "property damage to impaired property *or property that has not been physically injured arising out of a delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.*" In its opposition brief, Asphalt Paving itself admits for the purposes of this proceeding it failed to complete its contractual obligations by, in part, ignoring the specifications provided to it with respect to the number and size of the individual parking spaces and that Eastdale Mall was damaged as a result. (See Asphalt Paving's brief, pp. 3-11).

In *Sokol v. Atlantic Mutual Insurance Company*, 430 F. 3d 417 (7th Cir. 2005), the Seventh Circuit Court of Appeals addressed the "impaired property" exclusion under circumstances analogous to the case at bar. In that case, the Court entertained an insurance coverage dispute involving spoiled peanut butter. The peanut butter in question was contained in sealed packets supplied by plaintiff Sokol and Company to its customer, Continental Mills, for inclusion in boxes of Continental's cookie mix. *Id* at 419. When Continental discovered that the peanut butter had gone bad, it retrieved the cookie mix, substituted fresh peanut butter packets, and sought reimbursement from Sokol for the costs associated with the replacement. *Id.*

Sokol filed notice of Continental's claim with Atlantic Mutual Insurance Company, ("Atlantic Mutual") its comprehensive general liability insurer. Atlantic Mutual denied coverage under certain policy exclusions, among them, the "Damage to Impaired Property" exclusion, which contained wording nearly identical to that in the West American policy at

10

issue. Sokol then sued Atlantic Mutual and the district court granted summary judgment in favor of Atlantic Mutual on its policy defenses. Sokol appealed. *Id.* Examining the application of the "Damage to Impaired Property" exclusion, the Seventh Circuit held:

> Sokol's peanut butter paste is "your product" under the terms of the policy, and this product was incorporated into property "other than your product," that is, Continental's cookie mix. It is undisputed that the paste became defective, deficient, or inadequate. Sokol's payment of Continental's claim thus falls within the "impaired property" exclusion under the terms of the policy.

*Sokol* at 423.

In the instant case, the allegedly defective or deficient striping of the parking spaces was incorporated into property "other than your product," that is, the Mall parking lot and the Mall itself. It is undisputed that Eastdale Mall claims that the parking lot and the Mall itself have been devalued as a direct result of the defective or deficient striping. Under the rationale contained in *Sokol*, the "damage to impaired property" exclusion clearly operates to preclude coverage for Eastdale Mall's claimed damages. See, e.g. *Sokol* at 423; *See, also, Centennial Insurance Company v. Cummins Alabama*, 1992 U.S. Dist. Lexis 2793 *4 (U.S. D. C. S. D. Ala. 1992)(holding that the "damage to impaired property" exclusion was valid and specifically precluded insurance coverage for property damage to the manufacturer's products, property damage to work performed by the manufacturer and damages claimed for loss of use as to a product, work, or impaired property of the manufacturer.) Furthermore, to the extent Eastdale Mall makes claims for purely economic damages, appellate courts have determined that the "damage to impaired property" exclusion specifically precludes coverage for such

consequential damages. Examining the "damage to impaired property" exclusion, the Fourth Circuit Court of Appeals in *America On-Line, Inc. v. St. Paul Mercury Ins.*, 347 F.3d 89 (4th Cir. 2003) explained,

> The straightforward meaning of [the "damage to impaired property"] exclusion bars coverage for loss of use of tangible property of others that is not physically damaged by the insured's defective product. This exclusion places a limitation on the coverage of consequential damages, restricting coverage to loss of use of other persons' properties *that are physically damaged.* Without the limitation, St. Paul's risk would have been much greater and the premiums for such a policy undoubtedly would have been more expensive. St. Paul would have been asked to defend claims, for example, that because the computer was rendered defective because of the faulty Version 5.0, the store could not operate its computers, and because the store could not operate its computers, it had to close, causing loss of use of the premises and the business. The limitation imposed by the impaired property exclusion is designed specifically to deny coverage for this broader risk. *See, Seagate Technology v. St. Paul Fire & Marine Ins. Co.,* 73 F.3d 370, 1995 WL 759217, at *1 (9th Cir. Dec. 22, 1995) [**25] (finding no duty to defend based on impaired property exclusion where loss of use of inventory that was not physically damaged was caused by insured's faulty product or failure to fulfill terms of contract).

*America On-Line, Inc. v. St. Paul Mercury Ins.*, 347 F.3d 89 (4th Cir. 2003).

In essence, Asphalt Paving admits it failed to fulfill the terms of its agreement by completing defective paving work on the parking lot at Eastdale Mall and through affidavits of Eastdale Mall's own employees and experts, that the parking lot is less useful than it should be and Eastdale Mall has potentially lost value as a result. Regardless of how worded, all of Eastdale Mall's claims are unquestionably attributable to Asphalt Paving's (or incidentally, Tri State, acting on its behalf) "failure to perform a contract or agreement in accordance with its

12

terms." As such, any damage to any property other than Asphalt Paving's "product" or "work" would be damage to "impaired property" and thereby excluded from coverage under West American's policy.

### III. Conclusion

In conclusion, no coverage exists for the underlying lawsuit under the General Liability Coverage Part under West American's policy. The alleged damages in the underlying lawsuit do not amount to "property damage" and were not the result of an "occurrence," as those terms are defined by West American's policy. Even if "property damage" caused by an "occurrence" were at issue, the claims in the underlying lawsuit would be excluded from coverage by a number of West American's policy provisions. The claims are excluded in their entirety by the "damage to property," "damage to your product," "damage to your work" and "damage to impaired property" exclusions.

Consequently, there are no genuine issues of material fact and West American is entitled to a judgment as a matter of law in its favor declaring it owes no defense and/or indemnity, contribution or coverage on the insurance policy it issued to Asphalt Paving for the civil action styled *Eastdale Mall, LLC v. Asphalt Paving Company, Inc., et al.*, bearing Civil Action Number CV05-1391, pending in the Circuit Court of Montgomery County, Alabama.

ATTORNEYS FOR PLAINTIFF

_/s/ Christopher J. Zulanas_
Christopher J. Zulanas
**Email: czulanas@friedmanleak.com**
Michael J. Douglas
**Email: mdouglas@friedmanleak.com**

**Of Counsel:**
FRIEDMAN, LEAK,
DAZZIO, ZULANAS & BOWLING, P.C.
Post Office Box 43219
Birmingham, AL 35243
(205) 278-7000
(205) 278-7001 Fax

## CERTIFICATE OF SERVICE

I hereby certify I have caused a copy of the foregoing pleading to be electronically filed and served on counsel of record this the  25TH  day of  SEPTEMBER , 2006.

_____
OF COUNSEL

cc:
Mr. Robert D. Segall
COPELAND, FRANCO, SCREWS & GILL, PA
444 South Perry Street
Post Office Box 347
Montgomery, AL 36101-0347

Mr. Donald R. Jones, Jr.
Mr. James Ernest Bridges, III
DONALD R. JONES, JR., P.C.
2000 Interstate Park Drive, Suite 104
Montgomery, AL 36109

3975